Derbigny, J.
delivered the opinion of the court. This is a suit tor damages against a sheriff, who is said to have exposed property for sale without having advertised the time and place of sale, in the manner prescribed by law, reason whereof and other illegal practices, it is alleged, the property was sold for less than value.
The material facts, as they appear from the statement, annexed to the record, are that the defendant and appellee, sheriff of the parish of Ascension, having seized several slaves, the property of the plaintiff and appellant, in ex *541 ecution of a judgment obtained against him, advertised them for sale for the space of time required by law, viz. thirty five days, next preceding the day of sale; but, that on the day appointed, the slaves were not exposed to sale, on account of the defendant’s absence, and his deputy postponed the sale for eight days, at the expiration of which the slaves were exposed and sold. It further appears that the slaves had been bought by the plaintiff and appellant, in 1812, at a credit of one and two years, for the sum of 4615 dollars (or thereabouts, some of them having been purchased jointly with others, not included in the seizure here mentioned) that they were appraised to the sum of 3650 dollars, and were sold for that of 2645 dollars.
East’n. District.
Dec. 1816.
The main question, arising in the case, is whether it be discretionary with the sheriff to postpone a sale for any time he chuses to fix, when, owing to some impediment, the sale could not take place on the day which had been appointed according to law.
The exercise of discretion, in the execution of legal acts, must either be permitted by some express provision of the law, or be authorised by the example of constant practice, acquiesced in for a length of time. But, according to the *542 statute of the state, the property seized must be exposed for sale, on the day fixed by law. Nothing is said, as to what shall take place, if some unforeseen accident prevents the sheriff from fulfilling that duty: and as to the rules of practice, which existed here, before the promulgation of the statute (admitting that they be resorted to in cases of this nature) they are so widely different from our present mode of practice, that they afford but little or no information, as to the manner of acting in a case like this. It cannot be said, therefore, that a long established practice, authorised the defendant to exercise the discretion which he assumed.
What then shall be done, when some unforeseen obstacle prevents the sale from taking place on the day appointed? We think that, in such a case, the only regular way of proceeding is to begin anew, and advertise the sale again for the same space of time. Such was the practice in the Spanish tribunals, when the proclamations, pregones, had not been regularly made. 1 Elizondo, 13, n. 3. A practice nearly similar prevails in Virginia, when the property seized in execution remains unsold in the hands of the sheriff. 3 Tucker’s Blackst. ch. 26, sec. 2, in notis.
The doctrine of discretion in the execution of *543 legal solemnities, cannot be supported on any ground, even that of necessity. The abuses, to which it would open a door, are too obvious to require any comment.
The remedy, to which the plaintiff has thought fit to resort in this instance, is an action of damages against the sheriff. To his demand it is objected, that, the postponement complained of was notified to the attorney in fact of the plaintiff, on the very day that it took place, and that on the day to which the sale was adjourned, the said attorney was present at, and did not object to the sale. 2. That the plaintiff has sustained no injury.
I. We do not think that, from the silence of the plaintiff and attorney in fact, or the plaintiff herself, it ought to be implied that she gave her consent to the postponement of the sale for eight days. The sheriff acted, not by virtue of any consent on her part, but from his own authority. Her silence may have been the effect of a persuasion that no objection could avail her, or that she had no right to interfere. At any rate, it would be giving to that silence a most extensive interpretation to consider it, as a positive acquiescence, and approbation of the sheriff’s conduct.
*544 II. But, has she proved that she sustained any injury, and if any, to what amount?
On this question, the material evidence seems to be confined to this—That the slaves sold by the sheriff for 2645 dollars in 1816, had cost in 1812, 4,615 dollars, at one and two years; that they were appraised, previous to the judicial sale, at 3650 dollars; that negroes were worth more in 1816 than in 1812; that two persons who had come to the sale, on the day first appointed, went home and were not informed of the time of the second sale, and that there were no more than eight or ten persons present then. One witness, who bought four of the slaves, swears that all but one were sold for their real value: another, who bid on each of them, swears that they were all sold for their real value. They all brought more than two thirds of the estimation.
It must be confessed that it is not easy from such evidence to assess the damages, which the plaintiff and appellant has sustained. If there was any scale by which that was to be ascertained, it was by the appraisement; but it is contradicted by the depositions of two witnesses, except so far as it relates to the value of the mulatto wench Manon, which one of them ad *545 mits to be one hundred, or one hundred and fifty dollars more than the price at which she was sold. To that sum, therefore, the damages which are to be allowed to the plaintiff must be restricted
Morel for the plaintiff, Duncan for the defendant.
It is ordered, adjudged and decreed that the judgment of the district court be annulled, avoided and reversed, and that the appellant do recover from the appellee the sum of one hundred and fifty dollars with costs.